**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, CHIEF JUDGE**

Civil action No. 05-cv-00465-LTB-MJW

KARL PLOTT,

    Plaintiff,

v.

SENTRY INSURANCE, a Mutual Company, a Wisconsin corporation

    Defendant.

_____

**Order**
_____

Defendant Sentry Insurance ("Sentry") moves for partial summary judgment and for summary judgment, and plaintiff Karl Plott ("Plott") moves for summary judgment in this dispute over Plott's claims against Sentry for insurance payments and to reform his insurance policy. For the reasons stated below, Sentry's motion for partial summary judgment on Plott's claim for under-insured motorist benefits is GRANTED, Sentry's motion for summary judgment on policy reformation is DENIED, and Plott's motion for summary judgment on policy reformation is DENIED.

## I. BACKGROUND

The essential facts of this case are not in dispute. On February 23, 2001 Plott was involved in an automobile accident with Doris Curto ("Curto"), not a party to this case. Plott's car was insured by Sentry through a policy he purchased in 1997. Plott's policy included $50,000 in Personal Injury Protection ("PIP") and $300,000 in Uninsured/Under-insured Motorist protection ("UIM"). UIM provides an insured coverage in the event of an accident with an

uninsured or under-insured vehicle. If Plott chooses to settle a UIM claim, Sentry will provide him UIM coverage only if Sentry consents to such a settlement and has 30 days notice prior to settlement. This is to provide Sentry the opportunity to pay the insured and to subrogate the insured's claims against the insurer, owner or operator of the vehicle involved in the accident. Plott's policy did not include Additional Personal Injury Protection ("APIP"), which is PIP coverage beyond the statutory minimum.

On June 24, 2002, Plott settled with Curto for $30,000, $20,000 less than the limit of Curto's policy. Plott's lawyer at the time, Jeffrey Tompkins, contacted Sentry the day of the settlement meeting requesting permission to settle. The Sentry claim adjuster, Sharon Polzin ("Polzin"), stated that she needed more time to make an informed decision. On June 27, 2002 Tompkins wrote to Polzin stating that if Sentry did not approve the settlement to inform him in five days. On July 5, 2002 Sentry denied Plott's UIM claim.

While the parties dispute whether Plott's settlement with Curto was binding as of June 24, 2002, the record contains the following documents related to the settlement: an undated letter from mediator William Rudge stating that at the mediation session Plott "agreed to accept a settlement of $30,000," an affidavit from Randy Kotel, Curto's lawyer, stating that the agreement reached June 24, 2002 was "final and not subject to alteration or rescission," an Order Enforcing the Settlement from the District Court of El Paso County, dated August 9, 2002, and a release form signed by Plott dated September 6, 2002.

Plott filed this lawsuit in the District Court of El Paso County on February 11, 2005, making claims for (1) UIM coverage from Sentry under his policy, and (2) reformation of his insurance policy to provide APIP coverage under state law applicable at the time he purchased his

insurance. Sentry filed a notice of removal March 14, 2005. The parties have filed cross-motions for partial summary judgment on the claim for reformation, and Sentry has filed a motion for summary judgment on the UIM claim.

## II.  STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). I shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Once a properly supported summary judgment motion is made, the opposing party must provide specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980); Fed. R. Civ. P. 56(e).

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex v. Catrett,* 477 U.S. 317, 323 (1986). The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby,* 477 U.S. 242, 250 (1986).

## III.  DISCUSSION

The motions for summary judgment in this case raise two issues. First, whether Sentry is entitled to summary judgment on Plott's claim for UIM, and second, whether either party is entitled to summary judgment on Plott's claim for reformation. I will address both of these issues.

A.   Summary Judgment on Plott's Claim for UIM Coverage

Sentry contends that it is entitled to summary judgment on Plott's claim for UIM because

Plott did not provide Sentry with 30 days notice before settling, as required by Plott's policy.

Plott makes several responses. First, citing *Clementi v. Nationwide Mutual Fire Insurance Co.,* 16 P.3d 223, 232 (Colo. 2001), Plott contends that even if he failed to provide the requisite 30 days notice, Sentry must show prejudice in order to enforce its notice provision, and the record contains facts in dispute sufficient to deny summary judgment on whether Sentry suffered prejudice from Plott's late notice. Sentry responds that *Clementi* applies only to late claims of liability, and that insurers may still enforce late notice of settlement clauses without showing prejudice. *Estate of Harry v. Hawkeye Security Ins. Co.,* 972 P.2d 279, 282 (Colo. Ct. App. 1998). Significantly, the court in *Estate of Harry* rejected the prejudice rule in notice of settlement clauses because the Colorado Supreme Court had not adopted a prejudice rule in late notice of claims cases. *Id.* *Clementi* appears to have overruled, or at least unsettled *Estate of Harry,* since the *Clementi* court rejected the prejudice rule in late notice of claims cases and disapproved strict enforcement of notice of settlement clauses, specifically citing *Estate of Harry. Clementi,* 16 P.3d at 228 n.5.

Assuming that the prejudice rule of *Clementi* applies here, the undisputed facts show that Sentry has suffered prejudice. There is no dispute that Plott entered into a settlement before obtaining Sentry's consent, and did not provide Sentry 30 days notice. The undisputed facts show that Curto's policy limit was $20,000 greater than Plott's settlement figure and Sentry has provided Curto's affidavit stating that she had other assets. These facts show that when Plott settled, Sentry lost its right to subrogate Plott's claim. Plott suggests that Sentry did not lose its right to subrogate because Plott did not sign Curto's release until September 6, 2002, but there is no evidence in the record showing that Plott's settlement with Curto was not binding when he

made it on June 24, 2002.

Plott argues also that Sentry's behavior in this matter, and Sentry's general practice, shows Sentry was not prejudiced by losing its right to subrogate. Plott points to Polzin's deposition testimony that she could not remember a single instance when Sentry had denied permission to settle, that Sentry could not produce in discovery instances of refusing to settle, and that Polzin did not follow Sentry's normal investigatory procedures after she was notified of Plott's settlement, or take any other steps consistent with determining whether Sentry would approve this claim. Plott contends that this raises an issue of fact as to whether Sentry would have denied Plott's claim even if it was timely filed.

Even assuming these facts to be true (and Sentry contests at least some of them) this is not sufficient to defeat summary judgment. Plott's arguments are mere speculation about Sentry's future conduct. Plott's prediction that Sentry is unlikely to exercise its subrogation right does not create a fact in dispute to defeat summary judgment. By losing subrogation rights, Sentry lost the right to pursue a claim against Curto. An insurance company's loss of subrogation rights is prejudice. *See Owens v. Continental Ins. Co,* 216 F.3d 1088 (Table), No. 99-3201, 2000 WL 703133 at *5 (10th Cir. May 30, 2000). The case here is unlike *Clementi,* where the Supreme Court found facts in dispute regarding prejudice because the insurer, despite late notice, still had the opportunity prior to settlement to investigate the accident and assert its rights. *Clementi,* 16 P.3d at 232. Plott has not created a fact issue over the loss of Sentry's rights, and so cannot defeat summary judgment.

Plott argues additionally that the restrictive 30-day notice provision is void as contrary to public policy. Plott provides no authority for this proposition and the Colorado Court of Appeals

5

has held to the contrary. *See Artery v. Allstate Ins. Co.,* 984 P.2d 1187, 1194 (Colo. Ct. App. 19999) and *Estate of Harry,* 972 P.2d at 281-282.  Finally, Plott avers that Sentry is estopped from invoking the 30-day clause because it chose to deny the claim July 5, 2002, less than 30 days from when it was notified of the settlement offer. As discussed above, Plott's settlement with Curto was binding, so Sentry decision to deny the claim after the settlement does not undermine Sentry's enforcement of the 30 day notice clause.

B.     Summary Judgment on the Cross-Motions for Reformation to Provide APIP Coverage

Plott contends that Sentry did not offer him APIP coverage in writing or otherwise and offered him no explanation regarding the availability of APIP coverage. Sentry responds that it did offer him APIP coverage, in writing, and did adequately explain this coverage.

The parties do not dispute that under Colorado law in place at the time of the sale, Sentry was legally required to offer Plott the option to purchase APIP coverage, and to provide him with a sufficient explanation of his options to enable him to make an informed decision.  Col. Rev. Stat. § 10-4-710(2)(a)(1998) required that "Every insurer shall offer for inclusion in a complying policy. . . at the option of the named insured" additional insurance coverage as specified in the statute, including APIP protection.   While Col. Rev. Stat. § 10-4-706(4)(a)(1988) provided that "An insurer issuing policies providing coverages as set forth in this section shall provide written explanations of all available coverages prior to issuing any policy to an insured," the parties dispute whether this language applied to the APIP benefit in dispute here. The parties do not dispute that, regardless of a writing requirement, an insurer must provide an explanation of APIP benefits to an insured "in a manner reasonably calculated to permit the potential purchaser to make an informed decision," considered "under the totality of the circumstances." *Allstate Ins.*

*Co. v. Parfrey,* 830 P.2d 905, 913-914 (Colo. 1992).

The parties also do not appear to dispute that reformation is the appropriate remedy in the event of a violation of this provision of state law. *See Brennan v. Farmers Alliance Mut. Ins. Co.,* 961 P.2d 550, 554 (Colo. Ct. App. 1998.)  The issue here is whether Sentry offered Plott APIP in 1997 and whether this offer was in writing and legally sufficient.

Plott purchased his policy from Sentry representative Penny Harper ("Harper") in 1997, during a face to face meeting in Plott's office. Plott, in his affidavit, states that Harper did not explain to him the option of APIP benefits, did not provide him with written documents describing the APIP option, and that he does not recall signing a PIP selection form that contains information about APIP benefits. However, in Plott's deposition, he states that he does not recall any specific conversations with Harper about the coverage, limits or options in his policy, and he does not recall exactly what kind of documents he was shown.

Harper states in her affidavit that she explained APIP coverage options to Plott, and provided him with an APIP selection form that contained information on additional PIP benefits. Harper and Plott agree that Plott selected additional coverage in other areas but chose to select basic PIP rather than APIP coverage. Harper also contends that it was her habit and routine to provide information on PIP options in the process of explaining the PIP Selection Form. However, in her deposition testimony Harper states that she does not recall what specific conversations she had with Plott about his coverage options.

Sentry has produced its file on Plott's insurance policy, which Sentry purports to be a complete case file. It contains a checklist indicating all of the documents that were part of Plott's policy. The checklist indicates a PIP selection form is part of the package. Every document on the

checklist is contained in the file, except the PIP selection form. Plott argues that this missing form is evidence that he was not shown the PIP selection form and so not offered APIP coverage.

This evidence, considered together, is insufficient to show an absence of material fact on the question of whether Sentry offered Plott the option to purchase APIP coverage. The parties want me to conclude that the facts surrounding a routine sales transaction eight years ago that lasted about twenty minutes are beyond dispute. I decline to do so. The evidence presented suggests that this issue can only be resolved on a determination of credibility, and this is necessarily a question for a jury.

This disagreement over the 1997 sale renders irrelevant the dispute over whether the law required Sentry to provide the APIP option in writing. Harper states that she showed Plott the PIP Selection form and explained it to him. Plott contends that he received no explanation of APIP benefits. There are thus facts in dispute as to whether Sentry provided an explanation "reasonably calculated" to enable Plott to "make an informed decision."

Summary judgment on this issue, for either party, is not warranted.

Therefore it is so Ordered that:

1) Sentry's motion for partial Summary Judgment (Docket #22) is GRANTED;

2) Sentry's motion for Summary Judgment (Docket # 40) is DENIED and

3) Plott's motion for partial Summary Judgment (Docket # 42) is DENIED.

**DONE and ORDERED,** this ___1st___ day of May, 2006 at Denver, Colorado.

                                                        ___s/Lewis T. Babcock___
                                                    United States District Chief Judge